**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **D.B.,** Plaintiff, v. **DISTRICT OF COLUMBIA** Defendant. | ) | **Civil Action No. 18-1969 (APM)** |

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

In accordance with this Court's orders of June 11, 2020, and May 30, 2025[1], with 20 U.S.C. § 1415(i)(3)(B) and its implementing regulations, and with Fed. R. Civ. P. 54(d), plaintiff D.B. respectfully moves that this Court award him reasonable attorneys' fees and costs incurred in this case and the underlying administrative litigation in the amount of $226,259.50[2], plus any additional costs and expenses of this motion, to be determined.[3]

In support, D.B. submits the attached memorandum.

The District does not consent to this Motion.

[1] D.B. obtained the most recent consent extension to enable settlement discussions. The District has not made an offer and has expressed a lack of interest in allowing for more time.
[2] As discussed below, Argument IV.A., D.B. does not objection to the application of "Fitzpatrick matrix" rates, for a total award of $160,513.25
[3] D.B. has already included the work to date on this fees dispute in the attached itemization.

Respectfully submitted,

/s/ Douglas Tyrka
Douglas Tyrka, #467500
Tyrka & Associates, LLC
7322 Churchill Rd.
McLean, VA 22101
(202) 332-0038
tyrka@tyrkalaw.com

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **D.B.,** <br> **Plaintiff,** <br> **v.** <br> **DISTRICT OF COLUMBIA** <br> **Defendant.** | **Civil Action No. 18-1969 (APM)** |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

## BACKGROUND AND INTRODUCTION

D.B., at all relevant times an adult student within the District of Columbia Public Schools ("DCPS") system, has suffered from blindness and cognitive disabilities, among other issues, since birth. *See* R. 6, 403. He was in special education for all of his time in school, some of that time in Maryland. D.B. has qualified for special education under different diagnoses, most recently Other Health Impaired. R. 416, 744.

DCPS failed to provide D.B. a FAPE for several years, 2013 through 2018, by failing to provide him a school placement appropriate to his needs, among other failures.[4] R. 4, 6-7, 332-333 (2013-2014 placement held inappropriate), 337-362 (denial of FAPE 2014-2015 at Wilson High School), 389 (District conceding that 2015-2016 placement at Woodson Senior High

[4] As the Court is aware, as part of the ongoing related case brought by D.B.'s mother, 2016-CV-1033, in the fall of 2018 D.B. began to receive private instruction and services at home, with funding promised by DCPS. However, he was not *placed* at his home for instruction and services; DCPS provided the funding on a limited basis. Prior to that, since 2013 D.B. attended school for approximately two weeks, and received some minimal home services pursuant to a compensatory education award. *See* R. 760-61, 766.

School was inappropriate), 363-370 (this Court ordering compensatory education determination for 2014-2015 and 2015-2016 school years).

D.B. filed the Complaint in this case in 2018, seeking to overturn an administrative IDEA decision that denied him prospective relief for DCPS's uncontested failure to provide him with any school placement at all. *See, e.g.,* ECF 12 (Pl. Mot. Summ. J.). This was the second filed of two related cases regarding D.B.'s special education litigated in this Court concurrently. *See Butler v. Dist. of Columbia*, 16-CV-01033 (APM), 2020 WL 4001457 (D.D.C. July 15, 2020). In this case, the Court granted D.B. the entirety of the relief he had requested. *Compare* ECF 12-1 (proposed order) *with* ECF 20 (signed proposed order).

D.B. now seeks reasonable attorneys' fees and costs related to this litigation.

## LEGAL FRAMEWORK

In litigation under the IDEA, prevailing parties may obtain reasonable attorneys' fees and costs. 20 U.S.C. § 1415(i)(3)(B). The award of reasonable attorneys' fees under the IDEA is a matter of judicial discretion. *See id*. (authorizing the court to award attorneys' fees "in its discretion").

To obtain fees and costs, a party must establish that it is a "prevailing party," that is, "one who has been awarded some relief by the court." *Buckhannon Bd. and Care Home v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001).

Courts employ the lodestar method to determine fees under the IDEA, as they do under other fee-shifting statutes. *See Eley v. D.C.*, 793 F.3d 97, 100 (D.C. Cir. 2015). To determine the reasonable fees to grant to a prevailing party, a court must determine: 1) "the number of hours reasonably expended in litigation;" 2) the "reasonable hourly rate or 'lodestar';" and 3) any

"multipliers as merited." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (*en banc*) (*"SOCM"*).

The moving party must submit supporting documentation with the motion for attorneys' fees, providing sufficient detail so that the Court can determine that the hours billed were reasonably expended, that the hourly rate charged was reasonable, and that the matter was appropriately staffed to do the work required efficiently. *In re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989). The party must provide some information about the attorneys' billing practices and hourly rate, the attorneys' skill and experience (including the number of years that counsel has practiced law), the nature of counsel's practice as it relates to this kind of litigation, and the prevailing market rates in the relevant community. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996).

"In order to demonstrate [prevailing community rates], plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community," as well as "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Covington*, 57 F.3d at 1109.

Once the moving party has provided its supporting information, the number of hours and the rates are presumed reasonable, and the burden shifts to the non-moving party to rebut the moving party's showing. "[I]n the normal case the [non-moving party] must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109-10.

Finally, the overriding principle is that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "[T]rial courts need

not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

**ARGUMENT**

## I. D.B. IS A PREVAILING PARTY

When this Court granted D.B. summary judgment D.B. obtained relief as required by *Buckhannon*, a "material alteration of the legal relationship of the parties." 532 U.S. at 603-604; *see* ECF 20. Specifically, he obtained an injunction ordering the District to determine an appropriate school placement for him. *See* ECF 20.

## II. D.B. HAS FULLY DOCUMENTED HIS ATTORNEY'S FEES AND COSTS

D.B. has attached hereto a detailed itemization of tasks performed, hours expended, and rates charged in this case. Exhibit 2.[5] He has also attached hereto a verified statement from his attorney that provides information regarding the attorney's billing practices, his skill and experience, and the nature of his practice. Exhibit 3.

## III. THE HOURS ITEMIZED ARE REASONABLE

Upon determining that the Plaintiff is a prevailing party, the Court must determine "the number of hours reasonably expended in litigation." *SOCM*, 857 F.2d at 1517.

A review of the itemized tasks reveals that the hours claimed are reasonable. *See* Exhibit 2. As a specialist in this field, the Plaintiff's attorney was able to work efficiently. *See id.* Additionally, as the statement describes and the itemization exhibits, the Plaintiff's attorney exercised billing judgment to eliminate excessive, redundant, or otherwise unnecessary hours. *See id.*; Exhibit 3 at ¶¶ 4-8.

[5] The itemization is available in spreadsheet format upon request.

## IV. THE RATES REQUESTED ARE REASONABLE

Upon determining that the Plaintiff is a prevailing party and determining the hours reasonably expended, the Court need determine, from the documentation provided, "the reasonable hourly rate or 'lodestar.'" *SOCM*, 857 F.2d at 1517. More specifically, the rates must reflect those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see* 20 U.S.C. § 1415(i)(3)(C) (IDEA fee awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."). As evidenced by the several affidavits attached, D.B.'s attorney's customary *Laffey* matrix rates reflect prevailing rates. However, D.B. does not object to full "Fitzpatrick matrix" rates in this case.

### A. D.B. Does Not Object to the Court Applying Full "Fitzpatrick Matrix" Rates Here, as It Has Done in the Past.

D.B.'s attorney's standard rates, which he has earned on the market, match those in what is known as "the *Laffey* matrix." *See* Exhibit 3 at ¶ 9; *see* Exhibit 5. Those rates significantly exceed the rates in what is commonly referred to as the "Fitzpatrick matrix." *Compare* Exhibit 5 *with* https://www.justice.gov/usao-dc/media/1353286/dl?inline (matrix through 2024)[6]. However, D.B. is conscious of this Court's decision in *White v. District of Columbia,* in which the Court expressed a preference for (full and current) Fitzpatrick matrix rates in IDEA cases. *See* Civ. A. 20-3821 (APM), Memorandum Opinion and Order of October 16, 2023, at 17 (decision attached as Exhibit 1).

[6] As of this writing, the version of the Fitzpatrick matrix published by the Department of Justice includes rates only as of 2024. *See* https://www.justice.gov/usao-dc/media/1353286/dl?inline. As noted there, each year's new rates are determined by adjusting the prior's years rates according to "the legal services index of the Producer Price Index." *Id.*, note 11. The current rates should therefore be the 2024 rates times 307.850 and divided by 284.352. *See* https://fred.stlouisfed.org/series/PCU54115411 (January 1, 2025, and January 1, 2024, factors, respectively).

In the interest of judicial economy, if the District does not object to the application of current (inflation-adjusted) Fitzpatrick rates, neither will D.B. object. D.B. accordingly includes both rates and totals on the attached itemization. *See* Exhibit 2. If the District argues for the application of something less than Fitzpatrick rates, D.B. will press his argument for his attorney's reasonable rates established by the market, i.e., *Laffey* rates.

**B. The Plaintiff's Attorney Is an Expert in this Field.**

As detailed in his declaration, the Plaintiff's attorney specializes in IDEA litigation in this jurisdiction. *See* Exhibit 3 at ¶¶ 17-19. He has specialized in IDEA litigation for many years. *See id.* The Plaintiff's attorney is extremely experienced and is known and respected in this field in this jurisdiction. *See id.*

**C. IDEA Lawyers Earn *Laffey* Rates on the Market.**

Plaintiffs in fee cases may rely on "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Covington* 57 F.3d at 1109. The Plaintiff has presented the declaration of his attorney and another lawyer attesting to the ability to negotiate and earn LSI *Laffey* rates on the open market for similar work in this geographic area. *See* Exhibit 3 at ¶¶ 9-10; Exhibit 6 at ¶ 7.

In a review of a motion for fees, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993), *citing Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984) (internal quotation marks omitted). "The best evidence [of market rates] would be the hourly rate customarily charged by the affiant himself or by his law firm." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982).

"*In almost every case, the firm's established billing rates will provide fair compensation.*" *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1984), *overruled on other grounds by SOCM*, 857 F.2d 1516 (emphasis in original)[7]; *see Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1254 (D.C. Cir. 2007) (using customary rates to establish reasonable rates); *Murray v. Weinberger*, 741 F.2d 1423, 1428 footnote 21 (D.C. Cir. 1984) (overturning district court for other reasons, but approving use of customary rate to determine market rate); *Pawlak v. Greenawalt*, 713 F.2d 972, 979 (3d Cir.1983) ("[T]he value of an attorney's services is generally measured by his billing rate." (citation omitted)), cert. denied, 464 U.S. 1042 (1984); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983) ("The hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney.") (internal quotation omitted); *Flynn v. Dick Corp.*, 624 F. Supp. 2d 125, 131 (D.D.C. 2009) (quoting *Concerned Veterans* and relying heavily on customary rates); *Wilcox v. Sisson*, No. 02-1455, 2006 WL 1443981, *2 (D.D.C. May 25, 2006) ("The rates charged by counsel for the winning party are presumptively reasonable if they are the same rates that counsel customarily charge other fee-paying clients for similar work."); *Allen v. Utley*, 129 F.R.D. 1, 7 (D.D.C. 1990) ("when an attorney has a customary billing rate, that rate is the presumptively reasonable rate to be used in computing a fee award").

"[T]he most fundamental economic analysis indicates that, all things considered, the rate that [a firm] charges its clients is the market rate. In an efficient market, the price that competitors charge is driven down to the lowest price any competitor charges." *Adolph Coors*

[7] *SOCM* overruled the *Laffey* holding that an attorney who performed some public interest work at a reduced rate would only be compensated at that reduced rate, rather than the attorney's typical rate. *SOCM* did not criticize the general principle that an attorney's customary rate should be used to establish the market rate for services.

*Co. v. Truck Ins. Exchange,* 383 F.Supp.2d 93, 98 (D.D.C. 2005); *Cobell v. Norton*, 231 F. Supp. 2d 295, 302-03 (D.D.C. 2002)("'There is no better indication of what the market will bear than what the lawyer in fact charges for his services and what his clients pay.'") (quoting *Griffin v. Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001)); *Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 197 (D.D.C. 2016) (applying LSI *Laffey* rates in part because they were customary rates).

This principle applies even where those rates significantly exceed rates in the *Laffey* matrix. *See McKesson Corp. v. Islamic Republic of Iran*, 935 F. Supp. 2d 34, 40-41 (D.D.C. 2013) (awarding standard billing rates significantly exceeding *Laffey* rates); *Woodland v. Viacom Inc.*, 255 F.R.D. 278, 280-81 (D.D.C. 2008) (awarding rates exceeding *Laffey* rates and rates awarded by same judge in prior cases because opposing party offered nothing to indicate falsity of verified statement regarding customary rates).

Plaintiff's counsel customarily charges hourly rates in accordance with the LSI *Laffey* Matrix. *See* Exhibit 3 at ¶ 9-10. As the attorney's customary rates, they are presumptively reasonable.

While paying clients pay those rates, DCPS has repeatedly settled fees with Plaintiff's attorney at those same rates. *See id.* at ¶¶ 11-14. Those settlements are further evidence of the market and of reasonableness. *See Concerned Veterans*, 675 F.2d at 1325 ("Recent fees awarded… through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate.").

Lawyers, most importantly Plaintiff's attorney, earn *Laffey* rates on the market, so they are in line with prevailing market rates. *See Wimbish v. D.C.*, 251 F. Supp. 3d 187, 191-192 (D.D.C. 2017) (finding prevailing rates based on declarations substantively identical to those

attached hereto, including from Plaintiff's attorney).

### D. *Laffey* Rates Conform to a Matrix Reflecting Rates for Similar Services in the Community.

"In order to demonstrate [prevailing community rates], plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community." *Covington*, 57 F.3d at 1109; *see Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985); *see also SOCM*, 857 F.2d at 1525 ("commend[ing]" the use of the *Laffey* matrix).

The Plaintiff here presents "an updated version of the *Laffey* matrix" in addition to the multiple declarations as evidence that the requested rates are in line with prevailing rates in the community. Exhibit 4 (Matrix); Exhibit 5 (expert declaration).

The correct way to update the original *Laffey* matrix for inflation is to adjust it for changes in the legal services component of the Consumer Price Index, to create what is commonly known by the name "LSI *Laffey* matrix" and similar. This method, as opposed to those underlying other adjusted *Laffey* matrices, was developed by an expert economist. *See* Exhibit 5 (Dr. Kavanaugh declaration); *U.F. v. Dist. of Columbia*, CV 19-2164 (BAH), 2020 WL 4673418, at *6 (D.D.C. Aug. 12, 2020) ("Notably, declarations from Dr. Kavanaugh have twice served as key evidence in cases in which the D.C. Circuit upheld application of the LSI Laffey Matrix.").

"The LSI-adjusted matrix is probably a conservative estimate of the actual cost of legal services in this area." *Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 65 (D.C. Cir. 2015) (internal quotations omitted); *see DL v. D.C.*, 924 F.3d 585, 591 (D.C. Cir. 2019) (endorsing that view); *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 694, 708-710 (3d

Cir. 2005) (upholding trial court's use LSI *Laffey* matrix); *Serrano*, 209 F. Supp. 3d at 197 (using LSI *Laffey* adjustment).

As explained in the verified statement, the Plaintiff's attorney's rates perfectly conform to the LSI *Laffey* matrix, and so meet the *Covington* standard. *See* Exhibit 3 at ¶¶ 9, 16; *compare* Exhibit 2 *with* Exhibit 4[8].

### E. The LSI *Laffey* Matrix is an Appropriate Measure of Prevailing Rates in the Community for Similar Services.

In the past, the judges of the District Court split regarding the applicability of the *Laffey* matrix to IDEA litigation, and the Court of Appeals repeatedly declined to definitively resolve that split. *See Eley v. D.C.,* 793 F.3d 97, 101 (D.C. Cir. 2015) (declining to decide "whether IDEA litigation is in fact sufficiently 'complex' to use either version of the *Laffey* Matrix"); *DL*, 924 F.3d at 594 (D.C. Cir. 2019) (rejecting claim that the court had categorically "held that attorneys in IDEA cases should not be compensated at *Laffey* rates"); *but see Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring) ("I would simply add that, in my view, the United States Attorney's Office [update of the] *Laffey* matrix is appropriate for IDEA cases."); *Reed v. D.C.* 843 F.3d 517, 527-28 (D.C. Cir. 2016) (Tatel, J., concurring) ("I think it quite obvious that IDEA litigation is as complex as Title VII litigation.").

More recently, multiple judges have awarded full LSI *Laffey* matrix rates when requested by the plaintiffs. *See U.F.,* 2020 WL 4673418 at *9; *B.J. v. Dist. of Columbia*, 19-CV-2163-TSC-ZMF, 2020 WL 8512639, at *3–4 (D.D.C. Nov. 9, 2020), *report and recommendation adopted*, 19-CV-2163-TSC-ZMF, 2021 WL 5992052 (D.D.C. Feb. 10, 2021) (noting "[t]he

---

[8] Because the most commonly used publication of the matrix has not yet been inflation-adjusted for 2025, the Plaintiff made the adjustment by obtaining the 2024-2025 increase in the cost of legal services in the mid-Atlantic region from the Bureau of Labor Statistics and applying that to the 2024 rate. *See* Exhibit 4; https://www.bls.gov/regions/mid-atlantic/data/ProducerPriceIndexLegal_US_Table.htm (1141 times 313.944 (May 2024) divided by 292.862 (May 2025) equals 1223.

prevailing application of LSI Laffey Matrix rates" as the "Plaintiff [] Justified the Reasonableness of the LSI Laffey Matrix"); *M.G. v. Dist. of Columbia*, 15-CV-2239-KBJ-ZMF, 2021 WL 3507772, at *4 (D.D.C. Aug. 9, 2021) (later adopted by court in unpublished decision) ( "Plaintiff provides ample evidence that LSI Laffey rates are reasonable for the litigation in this case[.]"). As it happens, all three of these decisions were based on submissions very similar to those in this case.[9] *See id.*

As reviewed below, there are multiple reasons to conclude that IDEA litigation is at least as complex as other litigation in which *Laffey* rates have been applied.

1. <u>Lawyers experienced in federal litigation know that IDEA litigation is complex.</u>

The Plaintiff has attached declarations from several lawyers explaining how and why IDEA litigation is particularly complex. Exhibits 3, 6-9. These lawyers have experience in IDEA litigation and in other areas of law, including areas in which the Court of Appeals and the district court have regularly applied matrices. They state that IDEA litigation, whether at the administrative or federal court level, is at least as complex as the work in those other areas. *See id*. Specifically, they collectively state that IDEA work is at least as complex as, among other things, Title VII employment discrimination work, Section 1983 civil rights litigation, and Interstate Commerce Commission ("ICC") litigation, areas of law in which the *Laffey* matrix has been applied. *Compare* Exhibit 3 at ¶ 20 (Title VII, § 1983), Exhibit 6 at ¶ 14 (ICC), Exhibit 7 at ¶¶ 7, 12 (Title VII), Exhibit 9 at 4 (Title VII), *with Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) *aff'd in part, rev'd in par*t, 746 F.2d 4 (D.C. Cir. 1984) (Title VII); *Covington*, 57 F.3d at 1103 (Section 1983); *Wilkett v. I.C.C.,* 844 F.2d 867, 870 (D.C. Cir. 1988) (challenge to

[9] In each decision, each court did instruct the plaintiff to adjust some of the rates slightly to account for the time at which the work was performed. The Plaintiff has already set all rates in this case according to the lawyer's experience at the time of the work.

ICC decision); *Salazar v. D.C.*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000) (§ 1983); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) (§ 1983).

Other judges reviewing similar statements have relied on them for their conclusion that IDEA litigation is sufficiently complex to warrant matrix rates. *See Merrick v. D.C.*, 316 F. Supp. 3d 498, 510-11 (D.D.C. 2018); *M.G.,* 2021 WL 3507772 at *4.

As attested to in the declarations and reviewed in *Merrick*, the complexity of IDEA litigation arises from several factors. *See* Exhibit 3 at ¶¶ 21-24; Exhibit 6 at ¶¶ 15-17; Exhibit 7 at ¶¶ 8-12; Exhibit 8 at ¶¶ 5-7; Exhibit 9 at ¶¶ 5-7. Specialists must master – in addition to the IDEA statute, federal regulations, state regulations, related state statutes, administrative procedures, and caselaw – a huge amount of non-legal knowledge. *See id.*

This knowledge relates to education, including education policies, procedures, techniques, best practices, records, and administration, and to specialized disciplines pertinent to disabilities, like psychology, speech and language pathology, occupational therapy, physical therapy, and medicine. *See id.* IDEA litigators must know enough of those disciplines to understand and critique evaluations, cross-examine experts, and work with their own experts. *See id.* Often IDEA attorneys must themselves serve as experts. *See id.*

This court has repeatedly acknowledged the complexity of IDEA litigation arising from this requirement of specialized knowledge.

> It is also worth noting that in order to handle special education cases effectively, counsel must know far more than IDEA law in order to cope with the obstructive and delaying practices of DCPS. Sad to say, to be effective—i.e., to get services, education, and treatment for their young clients—it is essential that counsel understand the bureaucratic workings of that system, know competent and caring individuals in that system who can break logjams and obtain necessary evaluations, reports, and materials, and then assure provision of whatever FAPE is deemed appropriate. To accomplish this goal takes diligence, perseverance, persuasiveness, and negotiating and inter-personal skills—as well as the traditional legal skills expected of any competent lawyer.

*Cox v. Dist. of Columbia,* 754 F. Supp. 2d 66, 75 (D.D.C. 2010); *see Young v. Dist. of Columbia*, 893 F. Supp. 2d 125, 131 (D.D.C. 2012) (IDEA administrative litigation "requires not only knowledge of law, procedure, and trial advocacy, but also an understanding of the educational needs of students and the services necessary to address a range of developmental, emotional, and language-based disorders."); *Jackson v. Dist. of Columbia,* 696 F.Supp.2d 97, 102 (D.D.C. 2010) (quoting multiple cases citing complexity of IDEA litigation).

Looking only at the legal portion of IDEA work, defendants often argue that that IDEA administrative cases require little discovery and only moderate prehearing motions practice, but in fact this makes them more complex for attorneys.[10] *See* Exhibit 3 at ¶ 23-24; Exhibit 6 at ¶ 16; Exhibit 7 at ¶ 9-12; Exhibit 8 at ¶ 6; Exhibit 9 at ¶ 6. Because of the limited discovery, and the "moving target" nature of respondents, parent attorneys must prepare for multiple theoretical defense cases to every case. *See id.* The absence of depositions and the relative lack of pretrial filing allow respondents to present almost any kind of surprise testimony and to use any document in any way, multiplying the complexity many times. *See id.* With all of this in play, a thoughtful parent attorney must consider each IDEA case as several potential cases as they prepare and must then adjust the case many times on the fly during the hearing process.

These complexities are no less present in administrative cases as in federal cases. *See* Exhibit 3 at ¶ 24; Exhibit 6 at ¶ 17; Exhibit 7 at ¶ 11; Exhibit 8 at ¶ 7; Exhibit 9 at ¶ 7. While federal work may usually require more research and writing, the complications resulting from the lack of discovery are primarily an issue in the administrative work. *See id.*

---

[10] It is also worth noting that while discovery, particularly document production, can be the most cumbersome and annoying part of litigation, it does not make litigation more "complex" in any way that would suggest a higher hourly rate. To the contrary, it is the universal practice of larger firms to assign the least experienced lawyers to document production, and often to hire temporary contract lawyers to assist.

It is no wonder that Judge Tatel, concurring in *Reed*, said, "I think it quite obvious that IDEA litigation is as complex as Title VII litigation." 843 F.3d at 527-28.

2. Competent lawyers without IDEA experience have difficulty with IDEA litigation.

To test the complexity of IDEA litigation, one could take well-regarded, competent lawyers without an expertise in IDEA litigation, assign them to litigate IDEA cases, and see how difficult they find it to adjust. The results of two such tests can be found in the fees litigation in *G.H. v. D.C.* and the case of A.J., which was litigated in part under the *Blackman* class action. *See* No. CIV.A. 12-1638 BAH, 2013 WL 5297203 (D.D.C. Aug. 16, 2013) (*G.H.*); *Blackman v. D.C.*, 56 F. Supp. 3d 19 (D.D.C. 2014) (*A.J.*). *G.H.* was litigated by Squire Patton Boggs; *A.J.* was litigated by Crowell & Moring and Steptoe & Johnson, in addition to the Judge David L. Bazelon Center for Mental Health Law. *See* 2013 WL 5297203; 56 F. Supp. 3d at 24.

Those law firms, while very well regarded, are not known for any expertise in IDEA litigation. Interestingly, while the Bazelon Center has been heavily involved in IDEA federal litigation, notably *Blackman* itself, it is not known for its experience with individual IDEA cases at the administrative level.

The work and billing histories in those cases, especially as compared to the billing in this case, put the complexity of IDEA litigation in a dramatic light. However competent they may be in general, lawyers who are not experts in the field apparently find IDEA litigation challenging.

For the administrative litigation alone, the attorneys in *G.H.* and *A.J.* billed 879.5 hours and 790.4 hours respectively, more than thirteen times what Plaintiff's attorney spent on the administrative level work. *See* No. CIV.A. 12-1638 BAH, ECF 3; No. CIV.A. 97-1629 PLF, ECF 2407, 2433, 2460; Exhibit 2. A closer look at the billing illuminates some telling differences. The *A.J.* and *G.H.* attorneys spent 150.2 hours and 64.75 hours, respectively, on

legal research.[11] *See* No. CIV.A. 12-1638 BAH, ECF 3; No. CIV.A. 97-1629 PLF, ECF 2407, 2433, 2460. In the case at bar the Plaintiff's expert attorney, well versed in the various statutes, regulations, caselaw, and other sources, spent only 6.25 hours on legal research for this case. *See* Exhibit 2.

The *G.H.* and *A.J.* attorneys spent 25.5 hours and 24 hours, respectively, consulting with experts in special education disciplines, independent of time spent on testimony preparation. *See* No. CIV.A. 12-1638 BAH, ECF 3; No. CIV.A. 97-1629 PLF, ECF 2407, 2433, 2460. The Plaintiff's attorney, already an expert himself, spent no time consulting with experts independent of testimony preparation, exactly as suggested in the declarations discussing the complexities of IDEA litigation. *See* Exhibits 2-3, 6-9.

One might think that those otherwise competent lawyers spent many times as many hours litigating those cases because the issues were atypically complex, but that is not the case. In A.J.'s case, the only issue was wrongful expulsion. *See Blackman v. D.C.*, 56 F. Supp. 3d 19, 22 (D.D.C. 2014). In *G.H.*, the plaintiff had alleged an inappropriate IEP, the failure to implement the IEP, and a denial of parental participation, common claims. *See* 2013 WL 5297203. There is no reason to think that the *G.H.* and *A.J.* litigation would take several times the work devoted to this case.

If the Plaintiff's attorney can litigate his case in a fraction of the time the cases took those other lawyers, one must conclude one of two things: 1) the Plaintiff's attorney is enormously more competent that those other lawyers in general, which counsel does not for a moment suggest, or 2) IDEA litigation is so complex that even very competent lawyers find it very challenging if they have not acquired an expertise.

---

[11] In the cases of entries in which legal research was one of multiple tasks, counsel attempted to fairly distribute the time to different tasks.

As shown above, it appears that, in the complex and specialized area of IDEA litigation, the Plaintiff's more efficient attorney is in fact worth far more per hour than other lawyers. *See Merrick*, 316 F. Supp. 3d at 511 ("[B]ecause an attorney's total fee award is determined by multiplying the number of hours expended by the hourly rate, reducing the USAO *Laffey* rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice.").

**F. The Court Should Award Current Hourly Rates.**

When awarding fees under a federal fee-shifting statute, courts should make "an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise."[12] *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *see Copeland v. Marshall*, 641 F.2d 880, 893 n.23 (D.C. Cir 1980) (*en banc*) (hourly rate may be "based on present hourly rates, rather than the lesser rates applicable to the time period in which the services were rendered," to reduce or eliminate "harm resulting from delay in payment"); *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984) ("Using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the task of the district court."). Though of course this Court has full discretion, the use of current rates when requested is the "general practice" in IDEA cases. *J.T.,* 652 F. Supp. 3d at 31, n.6; *see McNeil v. Dist. of Columbia*, 342 F. Supp. 3d 156, 161-62 (D.D.C. 2018) (applying current rates in IDEA case over objection); *DL v. D.C.*, 267 F. Supp. 3d 55, 73 (D.D.C. 2017), *vacated and remanded on other grounds*, 924 F.3d 585 (D.C. Cir. 2019) (in IDEA case, "the process for compensating such a delay has been set out by the Supreme Court in *Jenkins*); *Thomas v. D.C.*,

[12] The appellate cases do not specify whether, when a fees matrix is used, one should apply current rates for the current experience class to all times or should apply to each entry the current rate for the experience class occupied at the time the work was done. Arguably the former approach is more appropriate because the latter approach effectively just adjusts the bill for inflation, which is typically less than the actual time value of money. In this case the plaintiff erred on the conservative side and used the second approach, resulting in lower rates.

908 F. Supp. 2d 233, 248-49 (D.D.C. 2012) (applying *Jenkins* and *Copeland* to IDEA case); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 155 (D.D.C. 2012) (same).

## V. THIS COURT SHOULD AWARD COMPENSATION FOR REASONABLE LITIGATION EXPENSES

The expenses itemized are of types consistently found to be reasonable. *See* Exhibit 3 at ¶ 15; *Daniels v. D.C.*, No. CV 14-665 DAR, 2017 WL 1154948, at *4 (D.D.C. Mar. 27, 2017). The expenses should be fully reimbursed.

## CONCLUSION

The Plaintiff is a prevailing party as defined by the IDEA and is therefore entitled to an award of reasonable attorneys' fees and costs. Because the Plaintiff's requested fees and costs are reasonable and reasonably incurred in the course of the litigation, the Court should award fees and costs in accordance with the time records and supporting statements.

Because of the District's long history of ignoring the timelines in orders for payment of IDEA attorneys' fees, *see Thomas,* 908 F. Supp. 2d at 245-46, the Court should also order that the District pay an additional $1,500.00 for each delay of a month or part thereof in payment. *See Cook v. D.C.*, 115 F. Supp. 3d 98, 107 (D.D.C. 2015) (awarding post-judgment interest in advance of possible future payment delay); *see U.F.*, 2020 WL 4673418 at *9 (holding that "the District's poor payment track record calls for imposition of post-judgment interest" from date of judgment instead of requested flat monthly charge for delay).

.

Respectfully submitted,

/s/ Douglas Tyrka

Douglas Tyrka, #467500
Tyrka & Associates, LLC
7322 Churchill Rd.
McLean, VA 22101
(202) 332-0038
tyrka@tyrkalaw.com