**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **D.B.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 18-1969 (APM)** |
| **DISTRICT OF COLUMBIA** | ) | |
| **Defendant.** | ) | |

**VERIFIED STATEMENT OF DOUGLAS TYRKA**

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. All statements in this declaration are made upon my personal knowledge or are derived from records I maintain in the ordinary course of my business.

3. I am the sole owner of Tyrka & Associates, LLC, counsel for the Plaintiff in this case.

4. The times and expenses itemized in the itemization attached to the Plaintiff's Motion for Attorneys' Fees and Costs accurately represent the times spent and expenses incurred by Tyrka & Associates in litigating this case, as those items were contemporaneously recorded, except that I declined to record many instances of work on this case.

5. All the work identified as mine was performed by me personally. I personally entered and edited all the items in the Tyrka itemization.

6. In recording times, Tyrka & Associates does not record times for tasks taking less than several minutes each and does not record times for various administrative tasks, even when those tasks are case-specific.

7. Tyrka & Associates does not record travel time when the staff member in question can accomplish multiple tasks with the same trip, as is often the case. When Tyrka & Associates does record travel time, it is billed at one-half the staff member's ordinary rate.

8. The items in the itemizations marked "NC" are items which I, in my conservative judgment, believed should not reasonably be charged to either party. In reviewing and adjusting an itemization, in addition to striking items by marking them with "NC" as shown, I also wholly delete entries from the original, contemporaneous time records when I deem it unreasonable to identify them as reasonable charges attached to this litigation.

9. From its inception in 2005 Tyrka & Associates has always exclusively charged at hourly rates matching those in what is commonly known as "the LSI *Laffey* Matrix," the *Laffey* Matrix adjusted for changes in the legal services component of the Consumer Price Index as described in *Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 61 (D.C. Cir. 2015) and other cases. The current LSI *Laffey* Matrix rate for my experience is $1141/hour.

10. Though Tyrka & Associates has historically primarily represented clients who cannot afford representation, the firm has had several clients pay the firm at the LSI *Laffey* Matrix rates directly, regardless of whether reimbursement is ever obtained.

11. In 2021, the District of Columbia settled Tyrka & Associates' bill for an IDEA case based on hourly rates equal to 100% of the rates in the LSI *Laffey* Matrix.

12. In 2020, the District of Columbia settled Tyrka & Associates' bill for three IDEA cases based on hourly rates equal to 100% of the rates in the United States Attorney's Office's attorney's fees matrix (USAO Matrix), for 95% of the total bill.

13. In 2019, the District of Columbia settled Tyrka & Associates' bill for an IDEA administrative case based on hourly rates equal to 100% of the rates in the United States Attorney's Office's attorney's fees matrix (USAO Matrix), rounded from $102,000 to $100,000.

14. In 2018, the District of Columbia paid, in settlement, Tyrka & Associates' bills for six IDEA administrative cases in full, based on hourly rates equal to 100% of the rates in the United States Attorney's Office's attorney's fees matrix (USAO Matrix).

15. The expenses in the itemization presented in my itemization in this case are the charges customarily paid in this field in this jurisdiction.

16. I received my juris doctorate from the University of Texas School of Law at Austin in June of 1998. Since my graduation from law school, I have worked exclusively in litigation. Since the middle of 2003, at least 90% of my practice has been in the field of special education law, representing parents in the District of Columbia. In my conservative and educated estimate, I have litigated over 1000 IDEA administrative cases and over 50 IDEA federal cases. I have won private school placement – the most substantial relief obtainable in IDEA cases – for more than 100 children, in my conservative estimate.

17. Tyrka & Associates and I in particular are known as experts in special education law in the District of Columbia. I am active in the community of "parent attorneys" in the District of Columbia. Aside from my contributions to semi-public discussions among members of the bar, I often advise other parent attorneys, including very experienced ones. Approximately twice per month I answer a telephone call or email from a parent attorney seeking advice on a case. Other IDEA attorneys regularly ask me to take IDEA cases from them to the federal courts.

18. As a result of my significant experience litigating IDEA fees, I can perform the work much more quickly than can less experienced lawyers, because I have various templates and

arguments at hand. Though work updating and adapting them remains necessary, I can generally create briefs in fee-shifting cases in several hours less time than could a less experienced lawyer.

19. During otherwise contentious fees litigation during the last 20 years, the District of Columbia has never questioned my experience, reputation, and expertise in the fields of IDEA litigation and IDEA fees litigation in the District of Columbia. The District has acknowledged my expertise in those fields in court.

20. In addition to my work as a special education lawyer, I have also worked on "Title VII" employment discrimination cases in federal court, "Section 1983" civil rights cases in federal court, and one complex wrongful death case involving medical technology and possible medical malpractice. I have found legal work under the IDEA to be far more complex than Title VII work and civil rights work and somewhat more complex than the wrongful death work. This complexity results from several factors.

21. Every IDEA case requires specialized non-legal knowledge regarding special education. Every case requires knowledge of education policies, procedures, techniques, best practices, records, and administration. Almost every case requires knowledge of specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, medicine, and others. A competent IDEA litigator must know enough of those disciplines to understand and critique evaluations, cross-examine experts, and work with one's own experts. Moreover, because school districts use their regular staff as experts but parents' expert witness fees are often not reimbursable, IDEA litigators must often rely on their own knowledge instead of that of experts.

22. The reason that the wrongful death case I noted was closer in complexity to IDEA cases than the other work I mentioned is that the wrongful death case required me to educate myself in

non-legal areas regarding medical technology and medicine in general. I still consider that work to be less complex than IDEA work, because IDEA work has required me to acquire knowledge in many more non-legal areas, and for the reasons listed in the next paragraph.

23. There is very limited discovery and pretrial exchange between the parties in IDEA cases, but that usually makes the preparation and litigation of IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses. Before the start of an IDEA hearing, and often well into a hearing, I have little idea what positions the respondent will take beyond "Respondent did not deny FAPE." For that same time, I often have little idea upon what documents the respondent will rely and for what purpose, because even though those the documents must be disclosed, there is no advance knowledge of what portions of what documents the respondent will emphasize, from a file possibly hundreds or thousands of pages. Similarly, though the respondent may disclose five to twenty potential witnesses, because hearing officers almost never require any warning of witnesses' testimony, I have no idea until the close of the parent's case which witnesses will appear or what each witness – including expert witnesses – will say. For these reasons, in a typical case and usually even in a simple case, I must prepare for very many potential defense cases presented by the respondent.

24. I have worked on both administrative and federal court IDEA cases. In my experience the administrative work is generally at least as complex as the federal work. The work in both venues involves the same legal questions. The federal work requires much more writing, and often more research as a result. But because at the administrative level the legal issues are rarely well defined until closing argument, at the administrative level one usually needs much more legal preparation and a much better general IDEA familiarity than is required at the federal level. Similarly, because there is no discovery at the administrative level, one often does not know

what the key evidence, including testimony, is until well into the hearing, so one must be very familiar with every existing document and must prepare for a broad range of surprise testimony, including possible testimony from a diverse range of experts.

25. I have entered into hourly rate retainers with many clients, in various areas of law. I and the firms for which I have worked have always set my hourly rate at the outset of the relationship. I have varied my hourly rates over time, but I have never changed my hourly rate based on the expected complexity of a case. I have not done that because the total cost of more complex litigation is already captured by the greater number of hours spent on more complex cases and because it is often difficult to judge the complexity of a case at the outset.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 17, 2025

Douglas Tyrka