**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **D.B.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA,**<br><br>**Defendant.** | ) | **Case No. 18-cv-1969 (APM)** |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Plaintiff D.B. seeks an award of $240,324.00 in attorney's fees and costs under the Individuals with Disabilities Education Act (IDEA). Defendant District of Columbia (District) does not dispute Plaintiff's status as a prevailing party. It does, however, contest Plaintiff's counsel's requested hourly rate, and it asks to exclude or reduce payment for certain tasks performed by counsel.

The court grants in part and denies in part Plaintiff's Motion for Attorney's Fees and Costs. The court awards fees at 75% of the hourly rates reflected in the U.S. Attorney's Office's (USAO) Fitzpatrick Matrix and orders Plaintiff to submit an updated invoice consistent with those rates and the court's other rulings.

## II. BACKGROUND

D.B. filed this suit in August 2018, seeking to compel corrective action for the District of Columbia Public School's (DCPS) failure to provide him with a free appropriate public education, as required by the IDEA. Compl., ECF No. 1. In November 2019, the court granted summary

judgment in favor of Plaintiff and ordered the District to convene an individualized education plan team meeting "to determine an appropriate placement for D.B." Order, ECF No. 20 [hereinafter Summ. J. Order]; *see also* Hr'g Tr. (draft), Nov. 27, 2019. Apparently, it took years to implement the remand order. *See* Mem. in Supp. of Pl.'s Consent Mot. for Extension of Mot. for Fees Deadline, ECF No. 32, at 2–3. Plaintiff eventually filed the instant motion in July 2025 seeking an award of attorney's fees and costs. Pl.'s Mot. for Attorney's Fees and Costs, ECF No. 33 [hereinafter Pl.'s Mot.].

## III. LEGAL STANDARD

The IDEA provides "a fee-shifting provision entitling a prevailing party . . . to reasonable attorneys' fees." *Price v. Dist. of Columbia*, 792 F.3d 112, 113 (D.C. Cir. 2015) (internal quotation marks omitted); 20 U.S.C. § 1415(i)(3)(B)(i)(I). An IDEA fee award "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C). If the court finds, however, "that 'the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience,' it 'shall reduce . . . the amount of the attorneys' fees awarded.'" *Eley v. Dist. of Columbia*, 793 F.3d 97, 99 (D.C. Cir. 2015) (alteration in original) (emphasis omitted) (quoting 20 U.S.C. § 1415(i)(3)(F)(ii)).

Because the IDEA "provides no further guidance for determining an appropriate fee award," *id.* at 100, the D.C. Circuit has adopted a "two-part framework" to determine whether an award of attorney's fees is "reasonable" under the statute's fee-shifting provision, *see Reed v. Dist. of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016). This framework considers "(1) the 'number of hours reasonably expended in litigation'; and (2) the 'reasonable hourly rate' for the services

provided." *Id.* at 520 (quoting *Eley*, 793 F.3d at 100). The fee applicant has the burden of establishing entitlement to a fee award under the IDEA. *See id.* The applicant must establish that they qualify as a prevailing party, document the appropriate hours spent by counsel, and justify the reasonableness of the rate requested. *See id.* at 520–21; *cf. Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (explaining the burden-shifting framework in the context of a fee petition under 42 U.S.C. § 1988). Once the applicant has shown that the claimed rate and hours are reasonable, the resulting sum is presumed to be a reasonable fee. *See DL v. Dist. of Columbia*, 924 F.3d 585, 588–89 (D.C. Cir. 2019). At that point, the defendant can challenge the request for attorney's fees, but it must do so with "specific contrary evidence tending to show that a lower rate would be appropriate." *Flood v. Dist. of Columbia*, 172 F. Supp. 3d 197, 203 (D.D.C. 2016) (quoting *Covington*, 57 F.3d at 1109–10).

The IDEA also allows "[p]arties who prevail at the administrative level [to] recover fees-on-fees . . . for time reasonably devoted to obtaining attorney's fees." *McNeil v. Dist. of Columbia*, 233 F. Supp. 3d 150, 153 (D.D.C. 2017) (alterations in original) (quoting *Kaseman v. Dist. of Columbia*, 444 F.3d 637, 640 (D.C. Cir. 2006)); *see also Jones v. Dist. of Columbia*, 153 F. Supp. 3d 114, 118 (D.D.C. 2015) ("The availability of reasonable attorneys' fees applies to fees incurred in IDEA litigation both before administrative agencies and in federal court, as well as to fees incurred to vindicate a plaintiff's right to fees.").

## IV. DISCUSSION

Plaintiff seeks an award of attorney's fees and costs in the amount of $240,324.00. *See* Pl.'s Reply Regarding Fees and Costs, ECF No. 38 [hereinafter Pl.'s Reply], Ex. 1, ECF No. 38-1 [hereinafter Time Entries], at 10 (L Total). Of that sum, $23,237 is for fees on fees. *See id.* at 9 (totaling entries from 4/29/2025–10/22/2025).

The District protests that the requested award is excessive. It primarily disputes Plaintiff's reliance on the LSI *Laffey* fee matrix to fix the hourly rate of his counsel, Douglas Tyrka, at $1,223. Def.'s Opp'n to Pl.'s Mot., ECF No. 37 [hereinafter Def.'s Opp'n], at 7–16; Pl.'s Mot., at 12 n.1.[1] It also opposes Plaintiff's demand to use current instead of historic hourly rates, requesting that the court apply 75% of historical Fitzpatrick Matrix rates. Def.'s Opp'n at 18–20. Further, the District contests certain billing entries, *see id.* at 2–6, only some of which remain in dispute, *see* Pl.'s Reply at 2–5. Finally, it objects to any award of post-judgment interest. Def.'s Opp'n at 20. The court takes these challenges in order.

**A. Reasonable Hourly Rate**

An IDEA fee award must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); *see also id.* § 1415(i)(3)(B)(i). "Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'" *Eley*, 793 F.3d at 100 (quoting *Covington*, 57 F.3d at 1107) (alterations in original). The District only challenges the second and third factors. *See* Def.'s Opp'n at 7–16.

*1. Attorney's Billing Practices*

With respect to the attorney's billing practices, counsel must "state the rate at which he actually billed his time in other cases during the period he was performing the services for which he seeks compensation from defendant." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982). "This rate is not what he would have liked to receive, or

---

[1] Plaintiff agreed that he would accept an hourly rate based on the Fitzpatrick fee matrix were the District not to contest that rate. *See* Pl.'s Mot. at 7–8. The District did object to it, *see* Def.'s Opp'n at 7–16, so Plaintiff's final demand is for the LSI *Laffey* rate, *see* Pl.'s Reply at 16–20.

what the client paid in a single fortunate case, but what on average counsel has in fact received." *Id.*

The representations on this score are thin. Tyrka states that his firm has "always exclusively *charged*" LSI *Laffey* rates, but he only identifies "several clients" who have actually paid those rates. Pl.'s Mot., Ex. 3, ECF No. 33-3 [hereinafter Tyrka Stmt.], ¶¶ 9–10 (emphasis added). These averments fall short of establishing that "on average" Plaintiff's counsel "in fact receive[s]" LSI *Laffey* rates. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326.

*2. Prevailing Market Rate*

The D.C. Circuit has recognized "two separate, but inter-related, approaches to providing evidence of prevailing market rate." *Reed*, 843 F.3d at 521. A fee applicant can show either (1) IDEA litigation "fall[s] within the bounds" of "complex federal litigation," in which case a reliable fee matrix can establish the prevailing rate, or (2) "establish the prevailing market rate by providing evidence of the fees charged, and received, by IDEA litigators." *Lee v. Dist. of Columbia*, 298 F. Supp. 3d 4, 13 (D.D.C. Jan. 12, 2018) (citing *Reed*, 843 F.3d at 521, 524–25). Plaintiff primarily focuses on showing that IDEA litigation is "complex federal litigation" to which the LSI *Laffey* matrix presumptively applies, *see* Pl.'s Mot. at 13–18, but he also attempts to establish that the LSI *Laffey* matrix reflects the prevailing market rates for IDEA litigators, *see id.* at 8–11. He succeeds at neither.

a. "Complex federal litigation"

The D.C. Circuit has yet to hold that IDEA cases categorically qualify as "complex federal litigation." *See Reed*, 843 F.3d at 525. It has, however, held open "the possibility that future fee applicants may be able to demonstrate that IDEA cases are 'complex federal litigation' to which the *Laffey* Matrix presumptively applies." *Id.*

Plaintiff takes up that invitation. He relies on five substantively similar statements from IDEA practitioners, including his own counsel. All make two basic points. First, that IDEA cases require a "huge amount of non-legal knowledge" or "specialized knowledge." Pl.'s Mot. at 14; *see also* Tyrka Stmt. ¶ 21; Pl.'s Mot., Ex. 6, ECF No. 33-6 [hereinafter Moran Stmt.], ¶ 15; Pl.'s Mot., Ex. 7, ECF No. 33-7 [hereinafter Savit Stmt.], ¶ 8; Pl.'s Mot., Ex. 8, ECF No. 33-8 [hereinafter Hill Stmt.], ¶ 5; Pl.'s Mot., Ex. 9, ECF No. 33-9 [hereinafter Hecht Stmt.], ¶ 5. And second, that "limited discovery" and "relative lack of pretrial filing[s]" in IDEA cases mean "attorneys must prepare for multiple theoretical defense cases to every case." Pl.'s Mot. at 15; *see also* Tyrka Stmt. ¶ 23; Moran Stmt. ¶ 16; Savit Stmt. ¶¶ 9–10; Hill Stmt. ¶ 6; Hecht Stmt. ¶ 6. These arguments are foreclosed. The D.C. Circuit in *Reed* rejected these very rationales for declaring IDEA litigation categorically complex. *See Reed*, 843 F.3d at 525. First, while attorneys who litigate IDEA cases may have specialized non-legal knowledge, this "is true in a number of specialized fields." *Id.* And second, the "absence of discovery" in IDEA cases may in fact suggest that they are less complex than "cases in which discovery is extensive." *Id.* These two features of IDEA litigation are thus "insufficient to demonstrate that IDEA cases involve complex federal litigation." *Id.*

In addition to practitioner statements, Plaintiff cites to IDEA cases litigated in 2013 and 2014 by lawyers at large law firms that do not specialize in IDEA work, whose hours billed were "more than thirteen times what Plaintiff's attorneys spent on administrative level work." Pl.'s Mot. at 16. According to Plaintiff, these case exemplars demonstrate that, "in the complex and specialized area of IDEA litigation, the Plaintiff's more efficient attorney is in fact worth far more per hour than other lawyers." *Id.* at 18. But as another court in this District has concluded, such "illustration merely reframes the previous argument the Court has already rejected—specialized

non-legal knowledge is insufficient to render a case complex." *White v. Dist. of Columbia*, No. 24-cv-0769 (DLF), 2025 WL 2049220, at *4 (D.D.C. July 22, 2025). That inexperienced IDEA lawyers would take more time to prosecute an IDEA case than experienced ones is unsurprising. "But it does not render IDEA cases categorically complex." *Id.*

Plaintiff relies heavily on this court's decision in *White v. District of Columbia*, in which the court held that evidence similar to that presented here was sufficient to carry the plaintiff's "'preliminary burden' of establishing that IDEA work is 'complex federal litigation.'" Mem. Op. and Order, *White v. District of Columbia*, Case No. 20-cv-3821 (APM), ECF No. 56, at 7. It is understandable why Plaintiff points to *White*, but upon further reflection the court finds that its analysis there was flawed. For one, the court did not consider the D.C. Circuit's decision in *Reed*, which held that comparable evidence failed to establish that IDEA cases constitute complex federal litigation. *See id.* at 7–8. And for another, in the IDEA matters cited by the court, the District stipulated or did not challenge that the case was complex federal litigation. *See id.* (citing *DL*, 924 F.3d at 592 ("The parties and the district court agree that this case qualifies as 'complex federal litigation.'")); *Salazar ex rel. Salazar v. Dist. of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (noting that the District "acquiesce[ed] in the notion that the litigation at issue qualifies as complex federal litigation"); *J.T. v. Dist. of Columbia*, 652 F. Supp. 3d 11, 30 (D.D.C. 2023) (observing that the District "apparently concedes that the relevant market is that of complex federal litigation"). The only question in those cases was the prevailing rate for IDEA litigation, not whether such matters are a category of complex federal litigation. It was in that context the courts held that the plaintiffs had met their "preliminary burden." *DL*, 924 F.3d at 591; *Salazar*, 809 F.3d at 64–65; *J.T.*, 652 F. Supp. 3d at 30. This court will not repeat here the error that it made in *White*.

Plaintiff also cites several post-*Reed* cases from this District where "judges have awarded full LSI *Laffey* matrix rates when requested by the plaintiffs." Pl.'s Mot. at 12–13. But the District did not contest that IDEA litigation is sufficiently complex in any of these cases. *See U.F. v. District of Columbia*, No. 19-cv-2164 (BAH), 2020 WL 4673418, at *4 (D.D.C. Aug. 12, 2020) ("[T]he District raises no dispute over the underlying proceedings constituting 'complex federal litigation' . . . "); *B.J. v. Dist. of Columbia*, No. 19-cv-2163 (ZMF), 2020 WL 8512639, at *3 (D.D.C. Nov. 9, 2020) (observing that the District did not dispute "that the underlying proceedings constitute 'complex federal litigation'"), *R. & R. adopted*, No. 19-cv-2163 (TSC), 2021 WL 5992052 (D.D.C. Feb. 10, 2021); *M.G. v. Dist. of Columbia*, No. 15-cv-2239 (ZMF), 2021 WL 3507772, at *4 (D.D.C. Aug. 9, 2021) ("The District does not argue that the representation in this case was not complex federal litigation."). They therefore are of little moment.

Plaintiff alternatively argues that even if IDEA litigation is not categorically complex, *this case* was sufficiently complex to merit full LSI *Laffey* rates. Pl.'s Reply at 16. He contends that this was not "a routine IDEA case because it was resolved in the District Court" and its "substantive resolution took almost two years." *Id.* But neither of those attributes renders this case uniquely complex. To determine complexity, courts consider factors "such as (1) the length of the administrative hearing; (2) the number of documents and witnesses presented at the administrative hearing; (3) the amount of discovery required; (4) the presence of novel legal issues; (5) the quantity of briefing required; and (6) the use of expert testimony." *Thomas v. Dist. of Columbia*, 908 F. Supp. 2d 233, 247 (D.D.C. 2012). Here, the administrative hearing lasted one day; the number of documents was not unusually large; Plaintiff was the only testifying witness for either side; there were no novel legal issues; the quantity of briefing was typical; and there were no expert witnesses. *See* Admin. Rec., ECF No. 10 [hereinafter A.R.], A.R. Pt. 1, ECF No.

10-1, at 3–18. And, yes, Plaintiff had to seek relief in federal court, but this case involved no additional evidence or novel legal issues. Such limited proceedings do not make for a complex federal case. *See, e.g.*, *Wilhite v. Dist. of Columbia*, 110 F. Supp. 3d 77, 90 (D.D.C. 2015) (holding that IDEA case was not complex where "Plaintiff did not raise any novel legal issues" and the hearing involved "less than one day, eighteen exhibits, and three witnesses"); *cf. Thomas*, 908 F. Supp. 2d at 248 (finding complexity where the "large majority of this action . . . [was] litigated in federal court" and involved "(1) the preparation and presentation of an expert witness; (2) the filing of four motions, including two motions for summary judgment; and (3) a question of first impression under the [Individuals with Disabilities Education Improvement Act]"). To be fair, counsel's representation of D.B. lasted years, but that length of time alone does not establish complexity.

b. <u>Prevailing rate</u>

Alternatively, Plaintiff contends that the LSI *Laffey* matrix reflects the prevailing rates that litigators in the community have received for IDEA work. *See* Pl.'s Mot. at 8–10; *Reed*, 843 F.3d at 521. Plaintiff points to his counsel's declaration plus one other as support for that proposition. *See* Pl.'s Mot. at 8 (citing Tyrka Stmt. and Moran Stmt.). Neither provides support. Plaintiff's counsel notes only that "several clients" in the last two decades have paid full LSI *Laffey* rates. Tyrka Stmt. ¶¶ 9–10. He also references 11 cases filed in the last eight years in which the District agreed to pay his law firm 100% or 95% of his hourly rate, *id.* ¶¶ 11–14, but only one of those cases involved LSI *Laffey* rates, *id.* ¶ 11. The remaining ten involved the U.S. Attorney's Office fee matrix, *id.* ¶¶ 12–14, whose rates are less than LSI *Laffey* rates, *see Salazar*, 809 F.3d at 65. These lower-rate settlements thus undermine Plaintiff's contention that the LSI *Laffey* matrix reflects prevailing rates for IDEA litigation. *See White*, 2025 WL 2049220, at *4. In any event,

Plaintiff's counsel's declaration alone is insufficient because Plaintiff must "produce satisfactory evidence . . . *in addition* to the attorney's own affidavit[]." *Eley*, 793 F.3d at 100 (internal quotation marks omitted). The additional evidence Plaintiff provides falls well short. The other declarant Plaintiff cites says that in 30 years of practice he has been paid full LSI *Laffey* rates "by some paying clients." Moran Stmt. ¶¶ 7, 12. Receipt of *Laffey* rates from "some paying clients" by one lawyer over the course of decades does not establish that LSI *Laffey* rates are the prevailing market rate for IDEA litigators. *See id.*

Because Plaintiff has failed to demonstrate that LSI *Laffey* rates are reasonable, the court will apply an hourly rate of 75% of the recently developed Fitzpatrick matrix rate. *Cf. J.T.*, 652 F. Supp. 3d at 32 (concluding that the Fitzpatrick matrix "offers a superior measure of the prevailing market rate for complex federal litigation"). This approach is in line with that recently taken by other courts in this District.[2] *See, e.g., Easterling v. Dist. of Columbia*, No. 24-cv-02973 (CJN), 2026 WL 923784, at *4 (D.D.C. Apr. 6, 2026) (citing cases); *Rawlings v. Dist. of Columbia*, No. 24-cv-2122 (SLS), 2025 WL 1432278, at *8 (D.D.C. May 19, 2025); *White*, 2025 WL 2049220, at *5; *Harrell ex rel. J.W. v. Dist. of Columbia*, No. 23-cv-3611-RDM-ZMF, 2024 WL 3640033, at *5 (D.D.C. Aug. 2, 2024).

*3. Current v. Historical Rate*

The parties also disagree as to whether the rates awarded should reflect current or historical rates from the applicable fee matrix. Plaintiff asserts that the court should apply current rates to compensate for the delay in receiving the fee award. Pl.'s Mot. at 18. The District, on the other hand, urges the court to apply the applicable rate at the time the work was completed. Def.'s Opp'n at 18–19. Given the passage of years since the administrative litigation commenced in 2018, the

---

[2] This reduction applies to Plaintiff's fees-on-fees work, too, as he has not made any showing that full LSI *Laffey* matrix rates are reasonable for such work.

court believes it appropriate to award current rates so that counsel receives the "present value of the services that [he] rendered." *See James v. Dist. of Columbia*, 302 F. Supp. 3d 213, 227 (D.D.C. 2018) (internal quotation marks omitted); *see also Easterling*, 2026 WL 923784, at *4; *White*, 2025 WL 2049220, at *5.

**B. Reductions of Time**

The District argues that certain categories of work are not compensable. Def.'s Opp'n at 2–6. Plaintiff has revised his fee request in light of these challenges, but disputes persist over time spent on individualized education plan (IEP) team meetings and what the District characterizes as "clerical work." Pl.'s Reply at 2–5.

As to the former, the court agrees with Plaintiff that the IDEA permits the awarding of fees relating to IEP team meetings if "such meeting is convened as a result of [a] . . . judicial action." 20 U.S.C. § 1415(i)(3)(D)(ii). Here, in November 2019, the court ordered as relief the convening of an IEP meeting to determine an appropriate placement for D.B. *See* Summ. J. Order. Plaintiff therefore may receive compensation for work relating to the December 2019 IEP team meeting. *See* Time Entries at 6.[3]

With respect to "clerical work," the primary dispute concerns "Plaintiff's time spent corresponding with a compensatory education provider or DCPS about purported billing issues," which the District urges should be billed at no more than a paralegal hourly rate. Def.'s Opp'n at 5. The court again agrees with Plaintiff that these are fully compensable tasks, as they are of a different kind than the "clerical" work that the D.C. Circuit has found not compensable. *See, e.g., Michigan v. EPA*, 254 F.3d 1087, 1095 (D.C. Cir. 2001) ("copying and pick up or delivery of documents"); *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 913 (D.C. Cir. 1996) (delivering

[3] In his reply brief, Plaintiff references an IEP team meeting in February 2020. *See* Pl.'s Reply at 2–3. Counsel's final time entries do not, however, reflect a meeting occurring in that month. Time Entries at 6.

documents); *In re Meese*, 907 F.2d 1192, 1203 (D.C. Cir. 1990) (delivering or picking up documents and photocopying).[4]

### C. Post-Judgment Interest

The court will, as other courts in this District have done, award post-judgment interest pursuant to 28 U.S.C. § 1961(a), "which sets a statutory rate for interest on any money judgment in a civil case recovered in a district court." *See J.T.*, 652 F. Supp. 3d at 37 (internal quotation marks omitted); *see also Easterling*, 2026 WL 923784, at *7; *White*, 2025 WL 2049220, at *5; *U.F.,* 2020 WL 4673418, at *9. Post-judgment interest shall begin to accrue 30 days from entry of a final fee order.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees and Costs, ECF No. 33, is granted in part and denied in part. By September 22, 2026, Plaintiff shall submit revised fees and costs calculations, including for fees on fees, consistent with this opinion.

Dated: September 15, 2026

Amit P. Mehta
United States District Court Judge

[4] To the extent the District challenges other time entries as constituting "clerical" work, *see* Def.'s Opp'n at 5; Time Entries at 2-3, they too are different in kind from purely clerical or secretarial services such as copying and delivery of documents.